PROUTY v. BULLARD *et al.*

**Tax Sale and Deed:** PURCHASE BY AGENT: WHETHER GOOD AS AGAINST PRINCIPAL: BURDEN OF PROOF AS TO PRINCIPAL'S INTEREST. Plaintiff purchased the land in question at tax sale when he was the attorney and agent of the defendant B. in such a sense that, had the legal title of the land been in B. at the time of the sale, plaintiff's tax deed, subsequently taken, would have given him title only in trust for B. But the title was at the time in one V., and B.'s claim as against the tax title is based upon an alleged equity in the land, which did not exist if V. was an innocent purchaser; and it seems to be conceded that plaintiff, when he purchased at tax sale, was of the opinion that V.'s title was good, and that B.'s equity was irretrievably gone. *Held* that whether plaintiff's tax title was good as against B. depended upon the question whether B.'s equity was *in fact* gone when plaintiff purchased, and that his relation to B., as attorney and agent, placed upon him the burden to show that V.'s title was good, and that B.'s equity was in fact divested thereby; and, having failed to establish these facts by the evidence, in an action by him to quiet his tax title, a decree for defendants was properly entered.

*Appeal from Humboldt District Court.*—HON. LOT THOMAS, Judge.

FILED, JANUARY 29, 1889.

ACTION in equity to quiet in plaintiff the title to lots numbers 1 and 2, in section 28, in township 92, range 29, in Humboldt county, Iowa. Defendant Bullard answered, denying the equities of the plaintiff's petition, and averring an equitable interest therein in his own behalf. There was a decree for the defendants, and the plaintiff appeals.

*Albert E. Clarke,* for appellant.

*E. F. Bullard* and *E. G. Bullard,* for appellees.

GRANGER, J.—The plaintiff's title is based on a tax deed executed November 4, 1880, on a sale for taxes

made in 1877, for the taxes of 1876. For the purposes of this case it may be said that this deed evidences a good title in the plaintiff, unless at the time of making the purchase at the tax sale and obtaining his deed, such a trust relationship existed between the plaintiff and the defendant Bullard that equity would preclude him from making such a purchase. The relationship claimed by appellees is that from some time in the year 1871 to about September, 1882, the plaintiff was his attorney and agent for the transaction of his business in Humboldt county, he being a resident of the state of New York. This claim, we think, is established by the testimony, but whether to the extent and under such circumstances as would legally preclude plaintiff from making the purchase referred to is for our determination. Let us briefly refer to the facts. The premises in question are in section 28 of the township referred to. One H. G. Bicknell bought this with other lands in October, 1869, of one Nixon, and gave back a thirty-five-thousand dollar mortgage, which mortgage was afterwards assigned to J. P. Bonesteel. Bonesteel, to secure the defendant Bullard for a loan of seven thousand dollars, assigned to him a preferred interest in such mortgage to that amount. This assignment was made January 13, 1871, and it is by virtue of this assignment that Bullard claims an equitable interest in the land. In May, 1870, Bicknell, who still retained the title to the lands (and was the mortgagor), sold some of the lands covered by the mortgage, other than the lands in question (the lands sold being in section 29), to what is known in this case as the "Mill Co." The mill company gave back to Bullard (defendant) and Bonesteel, on the land in section 29, a thirteen-thousand dollar mortgage, under an agreement between Bullard and Bonesteel that Bullard should have a one-half preferred interest therein, and in consideration thereof he was to reassign his seven-thousand dollar interest in the thirty-five-thousand dollar mortgage to Bonesteel, which he did, November 22, 1871. In January, 1873, Bicknell and wife conveyed the land in question, with other

lands covered by the thirty-five-thousand dollar mortgage, to Nancy Nixon; and July 1, 1873, Nancy Nixon and her husband, Alfred Nixon, conveyed the same to George T. Van Hoesen; and on the first day of July, 1875, Bonesteel quitclaimed his interest in the lands covered by the thirty-five-thousand dollar mortgage, including the lands in question, to Van Hoesen. Thus, July 1, 1875, upon the record, the fee title of the land is in Van Hoesen, and it stands unincumbered. In 1877, while the title is in Van Hoesen, the land is sold to the plaintiff for the taxes of 1876, and November 4, 1880, he receives a deed therefor, by virtue of which he seeks to quiet his title.

We now consider further the history of Bullard's equitable claim. Omitting many of the details as not essential here, it may be said in brief that after every resort which reason could suggest, the title to the lands covered by the thirteen-thousand dollar mortgage so failed that Bullard has been unable to recover anything on his seven-thousand dollar claim, the security for which he held at first in the thirty-five-thousand dollar mortgage covering the land in question, and which he exchanged by agreement with Bonesteel for an interest in the thirteen-thousand dollar mortgage. We think it clearly appears that this failure is the result of a mutual mistake between Bullard and Bonesteel as to the title to the lands covered by the last mortgage. After a failure to realize on the thirteen-thousand dollar mortgage security, after the plaintiff had his tax deed, Bullard instituted a suit against Van Hoesen, Nancy Nixon and Bicknell (serving them by publication), to cancel the release or reassignment of his seven thousand dollar interest in the thirty-five-thousand dollar mortgage, and to reinstate and foreclose the same, and a decree was entered to that effect in his favor. Upon such decree he took execution, and, when proceeding to sell the premises in question, this action was commenced, and the defendant sheriff temporarily enjoined. To a clear understanding of appellant's position it is proper to state that, while he denies the force and legal effect of many of appellees'

equitable claims, he asserts that beyond controversy the title of the lands so vested in Van Hoesen as to divest it of all prior equities, and that as a tax-title holder he takes all the title and interest of Van Hoesen. This is urged upon the theory that Van Hoesen was an innocent purchaser. In the case of *Bullard v. Van Hoesen et al.*, wherein the reassignment was set aside, and a decree of sale ordered for Bullard, Van Hoesen was adjudged not an innocent holder ; but of the effect of that decree we may speak hereafter. It should be kept in mind that the plaintiff was not a party to that proceeding, and that the suit was instituted after he obtained his deed.

If Bullard has equities which may prevail over the deed of the plaintiff, as we view the case, it is because of such a relationship between the parties during the period covered by the tax-sale proceedings that the law will, against plaintiff's objections, hold him as a trustee, and give Bullard the benefits arising from his acts. What, then, was that relationship ? The record in the case is so voluminous that both parties have felt a necessity for apology or explanation. We cannot set out the testimony. That plaintiff was from 1871 to 1882 both the attorney as to legal matters, and the agent of Bullard as to his other business concerns in Humboldt county, cannot well be denied. He seems, in some sense, to deny the attorney relationship to the extent claimed, but the history of the business so connects him therewith that he must be held as occupying a trust relationship as to the business of Bullard in that county. He knew of the assignment of the seven-thousand dollars' interest in the thirty-five-thousand dollar mortgage; he knew of the change of security when the interest was taken in the thirteen-thousand dollar mortgage; he knew of the failure of title, and was attorney and close adviser in all the efforts to realize on the new security; he knew that Bullard was without security for his claim, unless equity would reinstate him to his former position as to the thirty-five-thousand dollar mortgage; he must have known that, as between Bullard and Bonesteel, Bullard should be reinstated, and that

equity would reinstate him to his former security. The tenor of the correspondence indicates that Bullard relied on the plaintiff to watch his interests, and advise him. In August, 1872, in a letter, he says: "Please keep me posted in regard to all matters affecting my interests there." Judging from the subject-matter of the many letters which followed, we must believe that the plaintiff undertook the trust. Bullard had collections of rent and otherwise to be made, and these had the care of the plaintiff. In other cases where lands had been sold for taxes Bullard was advised by plaintiff to buy in the certificates with a view of aiding his claims thereby. In 1878, after the land in dispute had been sold for taxes, and the period of redemption was running, plaintiff informed Bullard of the *status* of the lands in sections 29 and 30 as to taxes, and especially informed him that "thirty had been sold for taxes." We understand that his excuse for not mentioning the sale of the lots in section 28 for taxes is that, before the sale, the land had passed irretrievably beyond the reach of Bullard as security for his claim.

We think this depends upon whether or not Van Hoesen was a good-faith purchaser, and this brings us to consider that question, and we say upon the facts of the case, as disclosed by the record, there is considerable to impeach his innocence or good faith. The writer of this opinion has serious doubts of any binding effect of the decree in the case of *Bullard v. Van Hoesen et al.* to set aside the reassignment. But the petition in that case was sent by Bullard to the plaintiff, and he knew its contents. He knew of the proceedings against Van Hoesen, and the decree against him. We think Van Hoesen must have known of that when he gave his testimony in this case. Plaintiff certainly did. That case impeached the good faith of the transaction when the sale was made to Van Hoesen. The testimony of Van Hoesen in this case contains no denial of bad faith; no statement in reference thereto. The record discloses that Van Hoesen paid nothing for the land.

The deed shows a consideration of sixteen hundred dollars, and a mortgage was given for the same amount. While that may not of itself show bad faith, it is, in its connection in this case, of some importance. We infer appellant's position to be that the law presumes the good faith of Van Hoesen, and that the burden of showing the contrary is with the defendants. Such is the general rule; but with the relationship established as in this case, and where the trustee is claiming the title to property which, but for his claim, would be at the disposal of his *cestui que trust*, and he seeks relief from the rule which would render his possession one of trust, he assumes the burden of showing every fact essential to his claim. If the tax sale had occurred with Bicknell as the owner of the land, we do not think it would be claimed that the plaintiff could have bought and held the title against Bullard, and hence his right depends entirely on the character of Van Hoesen's holding. With the testimony in the case, that holding is, at the best, of doubtful merit; and, with the burden upon the plaintiff to show him an innocent holder, the plaintiff's title is without protection in that respect.

The law governing the conduct of attorneys and agents has not been a subject of discussion by counsel. It is well defined, and especially with regard to attorneys, and requires the utmost good faith. Appellant does not seek to escape the force of the rule, whatever it may be, and we think that with the utmost good faith he relied in making his purchase upon his understanding of the law,—that, Van Hoesen having the title, Bullard's interest was gone.

Other questions are presented in argument, but as our holding upon the questions discussed is the controlling one, we do not consider them. The judgment below is                                        AFFIRMED.