## STANWOOD et al. v. WISHARD et al.

(Circuit Court, S. D. Iowa, Central Division. March 2, 1902.)

1. ATTORNEY AND CLIENT—DUTY OF ATTORNEY TO KEEP CLIENT ADVISED—ACQUIRING TITLE TO PROPERTY ADVERSE TO CLIENT'S INTERESTS.

It is the duty of an attorney to keep his client advised at all times of any facts which may affect the client's rights, and a court of equity will not permit him to acquire title to property in any way the subject of the litigation without the knowledge of the client, and adverse to his rights or interests, but will decree that he holds such title as trustee for the client, although acquired with his own money.

2. SAME—SUIT BY CLIENT TO DECLARE TRUST—DEFENSES.

A bill alleged that complainants were owners of obligations of a trust company which became insolvent and went into the hands of a receiver; that at the time defendant held the title to real estate, subject to certain mortgages, in trust for the company, to secure obligations which had been substantially paid before the insolvency, and, was receiving rents therefrom far exceeding the charges thereon; that complainants, who resided at a distance, employed defendant as their attorney to represent their interests, and he placed their claims in judgments, no part of which has been paid; that, pending the receivership, defendant, without their knowledge, purchased the mortgages against the property he held in trust, foreclosed the same, and acquired the title in his own name, and has since collected a large amount in rents therefrom. The bill prayed that defendant be decreed to hold the property in trust for complainants, and required to account for the rents, and to convey to them on payment of any sum found to be justly due him for money expended by him in the purchase. Held, that a plea setting up that shortly before the foreclosure sale the receiver had sold the property with other assets of the company, and received payment therefor, stated no ground of defense, it not appearing that defendant notified complainants of such impending sale, and the trust alleged by complainants having arisen through his action in subsequently acquiring title to the property while acting as their attorney, and without their knowledge, and while he was receiving the rents therefrom.

This action is by bill in equity. Defendant Wishard has filed a plea, now for determination. The bill is as follows:

For many years prior to 1896 the defendant the Des Moines Loan & Trust Company, of Des Moines, Iowa, was engaged in loaning money on real estate security in Iowa and other northwestern states, and in selling notes, bonds, and securities to parties in the East. Defendant Wishard, of Des Moines, for many years has been a practicing lawyer in the United States and state courts of Iowa, and from 1892 to 1896 was president of the said trust com-

¶ 1. See Attorney and Client, vol. 5, Cent. Dig. §§ 251, 256.

pany. Prior to 1896, complainants, residing in the East, relying on Wishard's professions of friendship, and his full knowledge of the condition of the trust company, were induced by him to loan large sums of money to the trust company, and to purchase securities from, indorsed and guarantied by it. January 1, 1896, Wishard retired from the trust company, but continued in the practice of law. A few months thereafter the district court of Polk county, Iowa, appointed a receiver of the trust company because of its insolvency, and to conserve its assets, and for winding it up. Therefore Wishard, both claiming to have and having full knowledge of the affairs and conditions of the trust company, and still professing friendship for complainants, and his ability to fully and promptly collect the sums due them, undertook said duties; they wholly relying on his efforts. Wishard put their claims in judgments against the trust company, which as yet are wholly unpaid. He acted in like capacity for others, and obtained judgments, and for those who may join brings this action.

While Wishard was still president of the trust company, at his instance the company made an agreement with one Kennedy by which Kennedy became the owner of a large portion of the assets of the company, including more than 5,000 acres of land, and the trust company became the owner of valuable real estate in Des Moines. But in making this exchange Kennedy conveyed the legal title of the Des Moines property to Wishard, but in trust for the trust company. Wishard has been in possession of this property ever since receiving said conveyance, in September, 1895. This property has been covered by buildings of high earnings or rentals, far exceeding the taxes and other charges. Wishard took this property under a writing with the trust company to hold the property in trust for the payment of certain indebtedness of several parties, creditors of the company, of $7,500, and for such sums as the company then or thereafter might be owing to him, and to indemnify him by reason of a bond he had signed for the company. Prior thereto Kennedy had given mortgages thereon aggregating $33,000. Prior to April 30, 1896, the trust company had paid off all indebtedness for which Wishard held the property in trust, excepting $754.16, which, as he claimed, was owing him for services, and $1,000 of said mortgage indebtedness, which he had guarantied, and a contingent claim on a bond which he had signed; but that during or prior to March, 1897, the rents of the property had fully wiped out all sums for which he took the property in trust. The mortgages referred to aggregate $33,000, as follows: One for $2,000, one for $6,000, one for $25,000. The largest one was to the defendant Des Moines Savings Bank. These three mortgages rested on separate pieces of property. Wishard's duties as attorney for the complainants required him to preserve the property from foreclosure, and to establish complainants' claims as liens on and against the Des Moines real estate referred to. But, to prevent complainants from participating in the rents and collecting the sums due them, and to cut them off in their claims to said property, Wishard undertook to and did purchase the mortgages of $2,000 and $6,000, and had them assigned to himself; and with a like fraudulent purpose he, as attorney for complainants, and also as attorney for the savings bank, entered into a contract with the bank by which the bank assigned to him the $25,000 mortgage. Wishard undertook in his own name, but for the joint benefit of himself and the bank, to foreclose the three mortgages, and thereby cut off complainants from participating in said rents, and from asserting claims or liens against any of the property, both Wishard and the bank being charged with knowledge and knowing of complainants' rights, and that said contract with the bank was in violation of Wishard's duties to complainants. In 1897 said foreclosure suits were brought, and soon thereafter they went to decrees in his (Wishard's) name. No one of complainants were made parties thereto, excepting Annie W. Stanwood. She was induced to appear, but made no defense by Wishard, her attorney, he advising her that she had no rights therein, and he filing her answer for her, she wholly relying upon him to protect her rights, and she being wholly ignorant of her rights in the matter. The decrees were for more than $33,000, an amount in excess of what was owing by him to the mortgagees. Under special executions the property was sold; Wishard receiving certificates of sales, he paying no money, but credit-

ing the judgments for the amounts of the sales. July 31, 1898, there being no redemption, Wishard received sheriff's deed for all the property. All of these things were done by him in violation of his duties to complainants, and in hostility to their interests. August 10, 1898, Wishard gave to the bank a mortgage on all the premises to secure $20,000, due July 1, 1903, still unsatisfied of record, and yet held by the bank. This mortgage was in pursuance to the plan engaged in by Wishard as against complainants and the trust company as to the title of said premises, in violation of his duties toward complainants, as both he and the bank knew, as he still held the title in trust, and the mortgage of the bank is junior to complainants' rights. Since July 31, 1898, Wishard has received $25,000 in rents from the property in excess of the taxes and other charges, which should be credited as against sum required to make redemption. Complainants submit that they have their election at final decree to have Wishard account for said rents to them, or to have their claims established as a first lien against the property. Wishard, holding the legal title to the real estate, was not competent to take assignments of the three mortgages; and in the foreclosures he did not disclose his trusteeship, and the decrees do not purport to and do not cut off his right as trustee. But then, and at all times since, the bank well knew that Wishard held the property in trust. By reason of his bad faith he can assert no just claim for fees or compensation in and about the matter. Complainants are willing to pay to Wishard what may be due him on an accounting by reason of any liens prior to theirs. Florence G. Wishard is the wife of Edward S. Wishard. The prayer is that Wishard and wife be decreed to have no interest in the property other than that Mr. Wishard holds it in trust until the sums justly due him are paid; that he be required to account for said rents and profits; that his attorney's liens on their judgments be declared void; that they be allowed to redeem the said premises from the foreclosure proceedings; that the amount to redeem be fixed, on payment of which Wishard be required to convey the legal title to them; and a prayer for general and equitable relief. Such, in a general way, is the bill in so far as it is now for consideration.

### Defendant Wishard's Plea.

In effect it is that by virtue of certain proceedings complainants are barred from a recovery herein. The plea, when summarized, is as follows: The insolvency and proceedings resulting in the appointment of a receiver for the trust company are recited. The legal title to the real estate in controversy, at the instance of the company, was placed in him, by virtue of a resolution of the board adopted in October, 1895, to be by him held in trust for the payment of certain investors with claims against the company aggregating about $7,300, for what the company then or thereafter might owe him, to pay him for the care of the property, and to reimburse him on account of what he might pay out by reason of being on its bonds and obligations; upon the payment of said claims the property to be that of the company. And there was a contract between him and the company of the same date to the same effect. Said debts thus provided for had not been paid when said receiver was appointed, and said trusteeship and said matters and the ownership of said property all appeared on the books of the company, and were known by its officers and the receiver, who filed his report June 1, 1896, setting forth said facts about the real estate. Afterwards the receiver brought suit to recover said property, setting up the trust, and claiming that Wishard owed the company, instead of the company owing Wishard. And Wishard, by answer, pleaded that the reverse was true. In October, 1896, the case went to decree in favor of Wishard that the company owed him $754, reciting said trust, and empowering him to continue in possession of the property, and continuing the case to the end that Wishard's suretyship for the company could be provided for later on. The receiver borrowed money and paid off all the debts connected with said trust, excepting that owing Wishard. The complainants employed him to put their claims in judgments, which he did. Pursuant to a decree in the receivership case, the receiver, as he was authorized to do, did sell to himself said property and other assets for $12,800, which sale to said Marquis was approved June 30, 1897, and the proceeds passed into his hands as receiver, and a deed to said Marquis was approved by the court, and filed of record. Said judgments in

favor of the complainants were after the appointment of a receiver, and were not liens on said real estate. By virtue of said sale by the receiver the complainants have received the full benefit of said property to which they are entitled. Said real estate was sold under foreclosures of the prior mortgages after the sale by the receiver, and, having received said benefits in the receivership proceedings, the complainants have no rights therein, and the rights of redemption passed to said Marquis under the receiver's sale, and that he (Marquis) alone had the right of redemption under the foreclosure proceedings. At all times since purchasing the said property at the receiver's sale Marquis has claimed to own said real estate, and now has a suit pending in which is involved the title thereto. And he pleads said matters in bar of complainants' bill.

Charles A. Clark, for plaintiffs.

J. M. Read and W. L. Read, for Wishard.

McPHERSON, District Judge (after stating the facts as above). The rights of a client as against his attorney are involved in this case. Opposing counsel are practically agreed as to the general rules. These rules are quite generally known by the profession. The purpose of the courts is to enforce them in all the cases if the facts warrant. The opinion of Judge Sanborn in the recent case of Trice v. Comstock, 121 Fed. 620, 57 C. C. A. 646, before the Circuit Court of Appeals for this circuit, states the rules as recognized by the profession generally. While that case was one between principal and agent, the rules, in a measure, are those which govern the relations between client and attorney. The only difference is that an attorney is held to a higher degree of accountability than is an agent. This is so because of the superior knowledge the attorney has as to the matters connected with the litigation. And in so many ways the attorney has the client and his interests in his grasp if he is disposed to make use of his power. So that the attorney must not only at first advise the client of his rights, but must keep on advising him. What the attorney knows about the situation, and the status of the litigation from time to time, the client must know. The attorney must not purchase or obtain an interest in the property the subject of litigation, adverse to the interest or rights of the client. And the fact that the attorney furnishes the money with which to make the purchase does not lessen the rights of the client. In short, the attorney must keep hands off in every sense, excepting to faithfully inform and represent the client, and in all respects conserve the interests of the client. And whether during the time he is acting as an attorney or after such relations have ceased, and whether with his client's money or with his own money, he purchases or acquires an interest in the property in any way the subject of litigation, a court of equity will decree that he holds such interests as trustee for the client. The cases are uniform upon the subject. Harper v. Perry, 28 Iowa, 57; Polson v. Young, 37 Iowa, 197; Phillips v. Blair, 38 Iowa, 649; Reickhoff v. Brecht, 51 Iowa, 633; Lynn v. Morse, 76 Iowa, 665, 39 N. W. 203; Insurance Co. v. Perry, 65 Iowa, 709, 22 N. W. 937; Prouty v. Bullard, 77 Iowa, 47, 41 N. W. 559; O'Dell v. Rogers, 44 Wis. 136–178; Moore v. Bracken, 27 Ill. 23; Stockton v. Ford, 11 How. (U. S.) 246, 13 L. Ed. 676; Baker v. Humphrey, 101 U. S. 500, 25 L. Ed. 1065. The rule was as well stated in the 28 Iowa case as can be found:

"The application of this rule forbids the attorney to purchase, against the interest of his client, property sold in the course of litigation in which he

is retained: and such sales will be held void, or the attorney will be held as the trustee of his client, and required to account as such."

Perry on Trusts, § 202, is to the same effect.

And an attorney must keep his client advised of what is being done, to the end that the client can attend sales and give directions in the business affairs of the litigation, and at judicial sales become a purchaser, and at private sales buy in outstanding titles or liens, to either perfect his title or make his claim. This phase of his duties is well stated by Justice Nelson in Stockton v. Ford, above cited, as follows:

"There is another ground of defense set up in the pleadings, and supported by the proofs, which has not been satisfactorily answered. And that is that the plaintiff was the attorney of Pryor in the judgment against Ford, employed to enforce its collection; and while holding this relation to him, and after the assignment of Jones to the latter, he became the purchaser in his own name, without communicating the fact to his client, and obtaining his consent. Holding this relation to Jones at the time of the purchase, it was his duty to have advised him of the seizure and sale, so as to have enabled him to prevent a sacrifice of the judgment on the sale; and, having not only neglected to do this, but having purchased the judgment himself, a court of equity will fasten upon the purchase a trust for the benefit of the client."

And the duty of an attorney to report to his client and keep him advised of the facts is illustrated and enforced in Insurance Co. v. Perry, 65 Iowa, 709-711, 22 N. W. 937.

It is to be seen whether. under the recitals of the bill and the plea, Wishard holds this property in trust. From the bill it has been seen that the trust company owned the property, subject to liens of about $33,000. It was turned over to Wishard in trust, which burdens were soon practically all lifted. From the time the trust company became the owner of the property until the present, Wishard has been in possession of it, receiving the rents, until he has received sums sufficient to discharge all incumbrances and burdens, excepting $20,000 of the Kennedy mortgages, and has received most of that $20,000. While attorney for complainants, he acquires the legal title by foreclosing and bidding in under the Kennedy mortgages. The plea, which goes to the entire bill, recites many facts, some of which are not in avoidance, but which, so far as material, conduce to a single point. And that is that this and other property were sold at a receiver's sale under the direction of the state court, and the purchaser paid $12,000 for this and other property, the benefits of which were enjoyed by the complainants. The allegations that such purchaser obtained a title, and that such title is still outstanding, and that such purchaser in some court is asking for a decree for the property, are utterly immaterial. There is no denial in the plea that Wishard owns the legal title, and no claim by him but that he does in fact own the property, and that he acquired the title in the way charged. And he does not admit that the purchaser has any right to or interest in the property. This matter merits but a brief argument. It is not apparent what such purchaser ever acquired. He has never been in possession, and has never received a farthing in rents, nor been at an expense of a cent on account of taxes, repairs, insurance, or other burdens. He only acquired a paper title, and then not any title the

trust company had, but Wishard's title, as is to be seen from the deed set forth in the plea. He did not receive the title of the trust company. The title Wishard then had was one in trust for the trust company. Suppose that was cut off? And suppose complainants did receive benefits therefrom? The title complainants are now seeking to have declared a trust is the title he acquired later on by purchase at foreclosure sale. The insufficiency of the plea is apparent from the transactions and the dates thereof. Wishard took the property in trust for the trust company in October, 1895. The receiver for the trust company was appointed in March, 1896. The trusteeship of Wishard appeared from the books, and the receiver from the first recognized it, and it was specifically decreed in October, 1896. The plea is silent, but it is evident that Wishard filed petitions on some of complainants' claims in 1896, as they went to judgment in January and June, 1897. The deed, bill of sales, and assignments by the receiver to the receiver's suit, and "other property" was made July 6, 1897. The Kennedy or prior mortgages were taken by Wishard in March, 1897, and he took a decree thereon in June, and a sheriff's certificate of sale in July, 1897, and a deed in July, 1898. From which it appears at the times he was representing complainants against the trust company he was wrecking the company by "bearing" it, and for personal gain buying up its assets. But it is said that Marquis paid $12,000 for this and other property. How much did he pay for this property? How much of the $12,000 did complainant receive? How much of the $12,000 was on account of this property? The plea is silent as to all these questions. The bill charges that Wishard placed complainants' claims in judgments, and that no part of them have ever been paid. And in the light of such allegations, which stand as verities, it is difficult to see how complainants have been benefited by the receiver's sale. The plea recites that the receiver sold the property to himself. This was done with the approval of the court. It may be supposed, therefore, that the sale should be treated as if the sale had been made to a stranger. But the complainants resided far away. They were in ignorance of what was going on. The plea does not recite that Wishard did not know all. By inference, at least, it can be said he did know. And the plea only recites that such purchaser of "this and other" property was the highest bidder. It is not alleged that the bid was adequate. No reason is pleaded why Wishard did not bid for his clients, and no reason is pleaded why his clients were not advised, to the end that they for themselves, or for themselves with others in like interests, could bid. The paper title of the purchaser at the receiver's sale was cut off by the foreclosure of Wishard, and Wishard now has the title and is in full enjoyment of the property. And there need be no discussion as to whether the judgments of complainants were at any time a lien on the property, for the reason that it was in the custody of the state court. That is not material. The property, subject to certain burdens, belonged to complainants and others, as creditors of the trust company. It was once theirs, and now it is in the name and hands of their attorney, without cash by him, other than his efforts to preserve it, and remove the liens, all of which has been done

with the profits from the property. That is the whole story. This had been brought about by shuffling the liens and mortgages and the title, which, if allowed, gives forms greater force than substantial rights. And this is what a court of equity, as between clients and attorneys, will not and should not allow to stand.

Therefore the plea is wholly insufficient, and is overruled.