STANWOOD et al. v. WISHARD et al.

(Circuit Court, S. D. Iowa, Central Division. February 13, 1905.)

1. JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY—CREDITORS' SUITS.

In a suit brought in a federal court by creditors of an insolvent corporation on behalf of themselves and all other creditors similarly situated to recover property alleged to belong. to the corporation, but to have been fraudulently acquired by certain of the defendants, where the claims of some of the complainants exceed $2,000, others may join although their claims are less than that amount.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 891.

Jurisdiction of circuit court as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

2. SAME—SUIT ON JUDGMENTS OF STATE COURT.

Judgment creditors of an insolvent corporation may maintain a suit in a federal court to enforce a trust against a third party in property alleged to belong to the corporation, and to have been acquired by defendant in fraud of their rights, where diversity of citizenship appears, and the requisite amount is involved, although complainants' judgments were recovered in a state court in suits on assigned notes, of which the federal court would not have had jurisdiction.

3. ATTORNEY AND CLIENT—PROPERTY ACQUIRED BY ATTORNEY ADVERSELY TO CLIENT'S INTERESTS—SUIT TO DECLARE TRUST.

An attorney employed to collect a claim cannot acquire for himself assets of the debtor which he should have subjected to the claim of his client, and where he has so acquired title the court will impress the property with a trust in favor of the client, regardless of the question whether or not the client had acquired a legal lien thereon.

[Ed. Note.—For cases in point, see vol. 5, Cent. Dig. Attorney and Client, §§ 250–263.]

4. SAME—LACHES.

A suit in equity by clients against an attorney for the declaration of a trust in property purchased by defendant while acting. in their behalf, in fraud of their rights, will not be held barred by laches because of a delay of six years before bringing suit, where complainants resided at a distance, and had no knowledge of the transaction, there being no duty of diligence resting upon them to inquire into the honesty of their attorney's conduct of their business.

[Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trusts, §§ 571–573.]

In Equity. On demurrer to amended bill.
See 128 Fed. 499.

Charles A. Clark and Walter C. Marquis, for complainants.
Read & Read and Berryhill & Henry, for defendants.

McPHERSON, District Judge. July 29, 1903, the original bill in equity was filed herein. After a time a plea was filed, and that plea was held insufficient. Then the defendant answered. Thereupon an amended and substituted bill was filed, to which a demurrer has been filed, which is now for determination. In substance, the bill is as follows: It charges a conspiracy against defendants Wishard and the bank of and concerning some valuable real estate in Des Moines of the Loan & Trust Company, of which all the plaintiffs were and still are creditors. This action is brought

not only for themselves, but all other creditors of that concern, now insolvent. This real estate was acquired by the trust company from one Kennedy in exchange for a large body of lands. But the title was taken in defendant Wishard's name, to be by him held in trust for moneys owing to him by the company, and to indemnify him for certain contingent liabilities of the company to him. It is alleged these have all been paid and extinguished. When the company received this property by taking the title in trust in Wishard, there were three mortgages thereon given by Kennedy at a prior date. One was for $2,000, another was for $6,000, and the third was for $25,000. This large one was to the bank defendant herein. The trust company became insolvent in 1896, at which time a receiver was appointed by a state court at Des Moines. Prior thereto Wishard had been an active officer of the company, and was entirely familiar with its affairs. It bought and sold commercial paper and its own bonds. The paper sold it indorsed. Much of the paper thus sold was to parties in the East, where the plaintiffs reside. In addition to his duties as such officer of the trust company, Wishard was a lawyer, residing at and with an office at Des Moines, where he engaged in the practice of his profession in both the state and federal courts. He sold to the plaintiffs the obligations of the company, and professed friendship for them, and much concern for their interests. At about the date of the insolvency of the company Wishard was employed as the attorney for plaintiffs to take such action as their interests required, and in all respects protect them in their just claims against the company. And as their attorney he obtained judgments against the company on said claims. Some of the judgments were considerably in excess of $2,000, and others for lesser sums. But one claim was placed in judgment before the foreclosure decrees to be noticed. Many orders and a sale of the company's assets took place in the receivership case in the state court. But few, if any of them, need be mentioned, because none of them are at all decisive of the demurrer now before me. Suffice it to say that the judgments of plaintiffs were taken in the receivership case, and Wishard was their attorney. And the real estate in controversy, subject to the $33,000 of Kennedy mortgages, belonged to the company, subject to the trust for which Wishard held the title. One matter pertaining to the alleged question of laches will be noticed later on. The claim was made on the hearing on the plea that the property in suit had been sold by the receiver to himself. But the facts with reference thereto do not merit discussion, and no purpose can be served by setting them out. Down to this point Wishard alone was acting in hostility to plaintiffs. Then, as is charged, the conspiracy was formed between the bank and Wishard to so manipulate the title to the real estate, an asset of the company, as to prevent plaintiffs or other creditors from asserting any claim against it. The bank and Wishard obtained assignment of two of the Kennedy mortgages hereinbefore noticed, aggregating $8,000; the bank already owning the other $25,000 mortgage. This being done, decrees of foreclosure were entered on all three for the principal and interest and costs, including large at-

torney's fees. All the real estate was sold at sheriff's sale, and a year thereafter a sheriff's deed was taken in Wishard's name. As one of the plaintiffs had a judgment against the company, she was made a defendant. But process was not served upon her. She being a client of Wishard, he prevailed upon her to allow him to file an answer for her, admitting she had no claim against the property, and, of course, the decree went against her. At the sheriff's sale no money was paid other than the costs. But in the meantime all plaintiff's judgments had been rendered. By fraud the assignment of one of them was obtained to an officer of the bank. He claimed the right to redeem. But this was done to swell by $2,000 the apparent amount necessary for other creditors to redeem. Excepting for such purposes, no other use was made of it. By these methods Wishard obtained the paper and legal title to the realty. He had been in possession from the time of the Kennedy conveyance. After thus obtaining the legal title, he gave the bank two mortgages on account of the three mortgages thus turned over to him for foreclosure purposes and for an additional sum he was personally owing the bank. But the rents of the real estate have practically paid off all incumbrances. If not entirely paid, plaintiffs are ready to discharge all valid incumbrances. All of which, and with much more detail, is charged to be a fraud upon the rights of plaintiffs, clients of Wishard, and to all of which the bank was a party to aid in consummating the fraud, and with full knowledge of plaintiffs' rights. The defendant company has not appeared. The trust company has no interest in the property. Its rights have been foreclosed and cut off. I do not think it a necessary party at all, and nothing more than a proper party. I see no impropriety in making it a party. But it has no interest in common with plaintiffs, and as such could not be joined with plaintiffs in this or in a state court. It has committed no fraud and has not been wronged.

As some of the plaintiffs have claims less than $2,000, it is contended that this court is without jurisdiction, and many cases are cited. I will notice a few of them. Colvin v. Jacksonville, 158 U. S. 456, 15 Sup. Ct. 866, 39 L. Ed. 1053, was a suit by a single taxpayer to enjoin the issue of municipal bonds. Held, that the interest of that one taxpayer determined the question of jurisdiction. Carne v. Russ, 152 U. S. 250, 14 Sup. Ct. 578, 38 L. Ed. 428, simply held that in a suit to redeem the amount necessary to pay was the jurisdictional sum as to an appeal. Davies v. Corbin, 112 U. S. 36, 5 Sup. Ct. 4; 28 L. Ed. 627, that an appeal from a mandamus the amount of the entire tax fixed the jurisdiction. Gibson v. Shufelt, 122 U. S. 27, 7 Sup. Ct. 1066, 30 L. Ed. 1083, held that where there were several plaintiffs an appeal would lie only as to those having claims of the jurisdictional amount. That these and other like cases are not in point is apparent. But that creditors with claims of less than $2,000 may join with those with claims of more than that sum has been held in the following cases: R. R. v. Parker, 143 U. S. 42, 12 Sup. Ct. 364, 36 L. Ed. 66; Stewart v. Dunham, 115 U. S. 61, 5 Sup. Ct. 1163, 29 L. Ed. 329; Clay v. Field,

138 U. S. 464, 11 Sup. Ct. 419, 34 L. Ed. 1044. There are many similar holdings. And, even if the rule were as contended by defendants, only part of plaintiffs would go out of the case.

It is contended that the claims of plaintiffs are based on notes payable to the trust company, and by it sold to plaintiffs. And therefore it is said that, as this court would not have taken jurisdiction against the trust company in suits on the notes, this court cannot take jurisdiction against Wishard in a suit to declare a trust. These claims were reduced to judgments in the state court at the suit of plaintiffs, by Wishard, their attorney. This suit is not on those notes. They are creditors, seeking to declare a trust against Wishard. It is of frequent occurrence that creditors' bills are filed in the United States Circuit Courts whose claims on notes were reduced to judgments in state courts. This contention is without merit. Indiana v. Glover, 155 U. S. 513, 15 Sup. Ct. 186, 39 L. Ed. 243. It seems to me that counsel for defendants do not meet the situation. They seem to be impressed with what was done in the receivership case in the state court. That is not the point to the bill at all. There was and is no occasion to allege those matters excepting as historical of what was consummated, and as showing that with plaintiffs more than a thousand miles away Wishard was acting in the state court of and concerning their claims and as their attorney. And as I understand the law to be, and as I want to be understood as holding, when the relation of attorney and client of and concerning a claim is once formed, the attorney can never afterwards buy up or speculate upon the assets that the attorney should have subjected to the payment of the claims placed in his hands for collection. And that is the whole point to the amended bill before me. To me it is wholly immaterial what occurred in the state court receivership case, excepting that Wishard was there as plaintiffs' attorney in seeking to get their money justly due them from an insolvent concern. With all that occurred in the receivership case recited in the bill or with all of it eliminated, the point remains that Wishard, while sustaining the relation of attorney to these complaining parties, bought up, either with money or as a paper transaction, as is charged, and the subject of the acquisition was what he should have acquired for his clients. That is the point to this amended bill, and the demurrers for the time being, at least, admit them to be true. Not only so, but the bank, as is alleged, with full knowledge, assisted in bringing this transaction on paper about. And no court, federal or state, can at this late day be persuaded to allow an attorney to do this. And it would not aid Wishard in the slightest degree in his attempt to retain the title if he had paid for the property in money, and with his own money. The court would or would not allow him to recover his money back, or would deny him that, according to the fact. That point has not yet been reached. I adhere to what I said at the former hearing of this case as reported in 128 Fed. 499.

It is fundamental that the court will decree such property to be held in trust for the clients, and it is absolutely immaterial whether the clients' claim is a legal lien or not when the attorney buys it. The court in such a case will impress a lien, and decree the trust. And it would result in the same decree if plaintiffs' claims were still only in

the form of naked notes. Wishard holds the paper title. The mortgages of the bank may or may not have been extinguished. They may or may not be valid. But suppose they are valid? Suppose its liens are superior to the rights of plaintiffs? It is good practice and a recognized practice to make superior lien holders parties defendant, to the end that the character and amounts of their liens may be decreed, and then parties bidding at a master's sale do so with full information of what they are buying, and an additional price is often obtained. And so here. If the court, on full hearing, shall decree that Wishard turn the property over to plaintiffs or to all creditors, they have a right to know from a decree what liens, if any, are on the property. And such is the very purpose in giving a plaintiff the right to bring in all parties having, asserting, or who possibly may assert a claim to the property or a claim against it.

As to laches: Plaintiffs were nonresidents. Some of them were women. Wishard was on the ground. He was their attorney. He rendered no effective service. Aside from some costs, he did not expend a dollar. He has received the rents for 10 years. By naked transactions on paper he has the legal title. He asserts absolute ownership in the property. This property belonged to the creditors of the company. Such are the allegations, and, if true, they constitute a fraud on plaintiffs. And on proof that such are the facts the court will decree a trust. Plaintiffs say they had no knowledge of the fraud until July, 1903, and that the details thereof have come to their knowledge largely since then. The time covered by laches and a statute of limitations are sometimes the same. But not always. It is largely a question of burden of proof. In a case decided by the Circuit Court of Appeals for this circuit within the last few months it was held that, if the plaintiff contends that a longer period than the statute of limitations shall not invoke the doctrine of laches, the plaintiff has the burden of showing that the doctrine shall not apply. But if the defendant insists that a less time than the statutory period defeats plaintiff, then the burden is on the defendant. It does not appear from the lapse of time that the situation of the parties has changed. There is no reason for believing that the property has materially changed in value. From the bill the alleged fraud is not in doubt. What could the plaintiffs have done at an earlier time? Must they all the time have suspected their attorney of fraud? Is that to be the rule? They reposed confidence in him. When did such confidence cease? Was it when they failed to get their money? Must a lawyer, when failing to get results, stand impeached for fraud? If so, then there is no lawyer of high or low station but must go over the dam. In the case at bar there is no innocent person to suffer by reason of delay. The whole case stands precisely as it would have been if this suit had been brought the day following the sheriff's deed. In Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807, it was held that the fraud was known when it could, by the exercise of diligence, have been known. That was a statute of limitations case. But, assuming that the same would be the rule in a case of laches (which is not always so), what diligence could have been used by these plaintiffs? None whatever. Defendants' contention

is, in effect, in asking a court to hold that a litigant must first suspect his lawyer of fraud. Then on such suspicion he must travel 1,500 miles, and go to work to unearth the fraud of his own lawyer, and then bring his suit because of an actual fraud. No such requirements are exacted of any one, and particularly is this not to be exacted of clients so far distant, some of whom quite likely are not familiar with business affairs. In Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076, the Supreme Court held that 36 years was not too late to bring an action against an executor who bought in the assets of the estate with which he had been entrusted. And on more than one phase of this case as alleged in the bill—and that is the only case now before the court—what the Supreme Court held in that case is nothing new, but is well worthy of keeping in mind. The Supreme Court said:

"The rule in equity is, in every code of jurisprudence with which we are acquainted, that a purchase by a trustee or agent of the particular property of which he has the sale, or in which he represents another, whether he has an interest or not, carries fraud on the face of it."

And surely an executor is no more subject to the charge of fraud than is an attorney, who is told from the first day he enters a law school or law office that he must not and shall not buy property the subject of real or possible litigation by his clients. The case of McIntire v. Pryor, 173 U. S. 38–54, 19 Sup. Ct. 352, 43 L. Ed. 606, collects the cases that conclude all discussion that as against an actual fraud, and as against one perpetrating a fraud when acting in a representative and trusted capacity, the period of the statute of limitations is largely if not wholly immaterial. And that a lawyer who buys in property on a paper transaction, paying but nominal sums, receiving such rentals as soon pay for it, when such property was subject to his client's claims, commits an actual fraud, and one which no court will wink at, is too plain for debate. The amended bill charges such a fraud. The demurrer, for the time being, admits them to be true. And, if not denied, or, if denied, but sustained by the proofs, there can be no other decree but one declaring that Wishard holds the property in trust. Defendants must answer the amended bill within the time allowed by the rules, or elect to stand upon their demurrer.

The demurrers are overruled.