FULLER v. BUTLER ET AL.

72  729
96  177
72  729
108  366

1. **Tax Sale and Deed**: NOTICE TO REDEEM: TO WHOM LAND IS TAXED. For the purpose of giving notice to redeem from a tax sale, the land will be regarded as taxed to the person named in the assessor's book, on file in the auditor's office, until such time as the tax duplicate is made out and placed in the hands of the treasurer ; (*Heaton v. Knight*, 63 Iowa, 686, and 65 Id., 434;) but after that time, and until another assessment is made, including the even-numbered year when no assessment is made, the land will be regarded as taxed to the person named in the tax duplicate in the treasurer's office. Accordingly, where the assessor's book in the auditor's office showed the land taxed to A., but the tax duplicate in the treasurer's office for the even-numbered year following the assessment showed it taxed to B., *held* that a notice to redeem from a tax sale, published in the even-numbered year, and addressed to A., and a tax deed made thereunder, were insufficient to cut off B.'s right to redeem.

2. ————: ACTION TO REDEEM: DELAY: EQUITY. A delay of three years from the time of the execution of a tax deed, in bringing an action to redeem by one on whom the notice to redeem was not served, does not show such laches as to justify a court of equity in denying him relief.

*Appeal from Polk Circuit Court.*

FRIDAY, MARCH 11, 1887.

ACTION to determine the ownership of real estate. There was a judgment for the defendants, and the plaintiff appeals.

*Baylies & Baylies* and *Richard Snell*, for appellant.

*Nourse, Kauffman & Guernsey* and *Parsons, Perry & Sherman*, for appellees.

SEEVERS, J.—The real estate in controversy is situate in the city of Des Moines. The defendants claim under a tax deed, and if it is valid this ends the controversy. The taxes of 1876 being delinquent, the land was sold in 1877 for said taxes. The expiration notice under which the defendants claim the deed was executed was served by publication on J. L. Mitchell ; the first publication being on August 18, 1880, and the last

1. TAX sale and deed: notice to redeem: to whom land is taxed.

on September 2, 1880. The deed was executed in September, 1882. In 1879 the land was assessed to and in the name of said Mitchell, but it appeared on the tax list or duplicate of 1879 and 1880 in the treasurer's office to be taxed to and in the name of J. H. Merrill. No assessment was made by the assessor in 1880 of real estate for the purposes of taxation. The question to be determined is, in whose name was the land taxed when the expiration notice was served, as above stated? Counsel for the appellant contend that it was taxed to J. H. Merrill, because it so appeared upon the tax duplicate in the treasurer's office. On the other hand, counsel for the appellees contend it was taxed to J. L. Mitchell, because it so appeared on the assessor's books for 1879.

The expiration notice was served, and deed executed, prior to the decision in *Heaton v. Knight*, 63 Iowa, 686. Counsel for the appellees rely on that case, and insist that it is decisive of the question to be determined; and counsel for the appellant rely on the same case on rehearing, reported in 65 Iowa, 434. Considering these two opinions together, it is apparent that the only question decided was that during each odd-numbered year, when lands are assessed for the purposes of taxation, and during the time the assessor's books are on file in the auditor's office, and prior to the time the tax duplicate is made out and placed in the treasurer's hands, the land must be regarded as taxed to the person named in the assessor's book. We did not determine what would be the rule if there was a conflict between the assessment and tax duplicate.

The latter is the treasurer's authority for the collection of taxes. To it all persons resort for the purpose of ascertaining the amount of their taxes, and upon what property they have been levied. When the tax duplicate is made out, and filed in the treasurer's office, the assessment made by the assessor ceases to be of importance. The primary object of the assessment is to enable the board of supervisors to determine the rate per cent of the levy, and the auditor to make

out the tax duplicate. In one sense, property is not taxed until there is a levy, and the tax duplicate is not made out until it has been made. It is the result of the combined action of the assessor in making the assessment, the board in making the levy, and of the county auditor, whose duty it is to make out the tax duplicate; and it seems to us that after it is made out, and placed in the treasurer's hands, it constitutes the best and only evidence in whose name any particular tract of land is taxed, and it remains such, at least, until there is another assessment, which for a time, and until another tax duplicate is made out, becomes, in accordance with *Heaton v. Knight*, before cited, the evidence in whose name real estate is taxed. As we have said, there was no assessment of real estate made in 1880, and therefore there was no assessor's book for that year to which resort could be had for the purpose of ascertaining in whose name the land was taxed. It seems to us preposterous to suppose that the most diligent inquirer would in such case go back to the assessment made in 1879 for the purpose of ascertaining such fact, when the tax duplicate was in existence.

There is another fact entitled to weight. The tax duplicate for 1880 is made up from the tax duplicate of 1879, and not from the assessment made in the latter year. The duplicate, therefore, of 1879, when made out and filed, took the place of the assessment; and, in making out the tax-list for that year, and also for the subsequent year, the auditor had the power to correct mistakes in the assessment. ( Code, § 841.) This necessarily includes the power to determine when a mistake has been made. *Conway v. Yonkin*, 28 Iowa, 295; *Parker v. Van Steenburg*, 68 Id., 174.

The tax deed was executed in September, 1882. At the time the land was sold for non-payment of taxes, it belonged to one Mitchell, who conveyed the same to the plaintiff, for the consideration of $100, in May, 1885. The land at that time was worth $5,000. It is insisted by counsel for the appellees that because of the

2. ——:
action to re-
deem: delay:
equity.

lapse of time a court of equity should refuse to grant any relief, and leave the plaintiff to assert his rights in a court of law. The delay, conceding that the plaintiff is bound by the laches of Mitchell, does not exceed three years. We do not think this lapse of time sufficient to close the doors of a court of equity. Besides this, it is not by any means certain that the plaintiff could not recover in an action at law.

The plaintiff offers in his petition to pay such amount as the court finds he should pay in order to redeem. This we think he should do; but, as the question as to the amount he should pay has not been discussed by counsel, we will not undertake to determine it.

For the reason that no expiration notice was served on the person in whose name the land was taxed, the judgment must be reversed, but the case will be remanded, with instruction to ascertain and determine the amount plaintiff should pay; and, when such payment is made, a judgment should be entered in accordance with this opinion.

REVERSED.