## LYNN v. MORSE.

### THE SAME v. WELLS.

### THE SAME v. MITCHELL.

| 76 | 665 |
| 96 | 589 |
| 97 | 265 |
| 76 | 665 |
| 116 | 331 |
| 76 | 665 |
| o119 | 286 |
| 76 | 665 |
| 120 | 69 |
| 76 | 665 |
| 129 | 221 |

1. **Tax Sale and Deed:** DEFECTIVE DEED: WHO MAY QUESTION. Section 897 of the Code, providing that no person shall be permitted to question a tax title unless he or his grantors had title to the property at the time of the tax sale, applies to cases where there are formal defects in the tax deed.

2. ———: ACTION TO SET ASIDE: CONDITION: TITLE OF PLAINTIFF: LOST DEED: EVIDENCE TO SUPPLY. Plaintiff brought these actions to set aside tax deeds, and was required first to show title in himself or his grantors when the tax sales were made. (Code, sec. 897.) The chain of his title ran back unbroken for more than thirty years to one Mrs. M., but there was no deed of record to her from T., who entered the land. Plaintiff, however, claimed that such a deed had been made but lost, and he showed that there was found among T.'s papers a contract for the sale of land in Adams county, Iowa, by T. to M., for six hundred and forty dollars, of which two hundred dollars had, according to the agreement, been paid, and three hundred and forty dollars were to be paid in two weeks and a deed made. This was dated May 3, 1856. The deed from M. was dated August 21, 1856. T. lived ten years after this agreement, but neither he nor his administratrix nor his heirs ever afterwards claimed title to the land in question, but such title was claimed by M. and his grantees, who alone paid the taxes during all those years. *Held* that this evidence was sufficient to establish the execution of the deed from T. to M.; and, since the deed by Mrs. M. was a warranty deed in the usual form, in which she and her husband united in the granting clause and covenant and acknowledged receipt of the consideration, *held*, further, that it was immaterial whether T. conveyed to Mrs. M. or her husband. And *held*, further, that though but three hundred dollars had been paid by M. under the agreement, that payment would have given M. and his grantees the right to redeem from tax sales. (See cases cited in opinion.)

Lynn v. Morse.

3. ———— : ———— : ———— : PAYMENT OF TAXES DUE BY PLAINTIFF : PLEADING : WAIVER : APPEAL. Before a party can maintain an action to set aside a tax deed, he must show title in himself, and also "that all taxes due upon the property have been paid" by himself or his grantors. (Code, sec. 897.) The fact of such payment must, therefore, be stated in the petition ; from which it must be inferred that the taxes contemplated are those due when the action is commenced, and not those which may fall due subsequently ; and it has often been held that the provision does not apply to taxes paid by the tax-sale purchaser. (See cases cited in opinion.) But where the petition does not allege the payment of taxes by plaintiff, and no objection is made on that account in the trial court, none can be raised on appeal in this court.

4. ———— : NOTICE TO REDEEM : WRONG INITIALS OF NAME OF PERSON TO WHOM TAXED. Where land was taxed to M. F. C. for the year in which notice to redeem was published, and such notice was addressed to N. F. C. and J. H. L., held that it was insufficient. (See cases cited in opinion.) And the fact that the auditor had written the name of J. H. L. in pencil opposite the description of the land, but not in the column ruled for the names of owners, did not make the notice good.

5. ———— : DEED TO OWNER'S ATTORNEY : BAD FAITH : ACTION TO REDEEM. A. & T. were attorneys for L. in the foreclosure of a mortgage on the land in question. They bought the land for L. at the foreclosure sale, and when the sheriff's deed was made they sent it to L. with a statement of the taxes then due and unpaid on the land for the preceding year. But the land had been sold for taxes some years before, and they were at the time attorneys for the holder of the certificate of sale for the purpose of publishing notice to redeem ; but they did not inform L. of this lien upon the land. Afterwards the certificate was assigned to T., and he procured a tax deed, and quitclaimed to M. Held that it was the duty of A. & T. to inform L. of the tax sale, and that, having failed in that duty, T. could not acquire a good tax title as against him ; and that M., taking by a mere quitclaim deed, could take no better title than T. had.

6. ———— : NOTICE TO REDEEM : UNSIGNED AFFIDAVIT OF SERVICE. An affidavit of service of notice to redeem from tax sale is not complete, and is of no effect, unless signed by the affiant. (See *Crenshaw v. Taylor*, 70 Iowa, 386.) And where, after filing such affidavit, the affiant claims that it is sufficient, and denies the right to redeem when the owner seeks to do so by paying the necessary amount, the affiant cannot then cure the defect by filing a properly signed affidavit and, after the lapse of ninety days thereafter, take a valid deed thereunder.

*Appeals from Adams District Court.*—Hon. R. C. Henry, Judge.

FILED, SEPTEEBER 6, 1888.

THE plaintiff in the three cases claims to be the owner in fee-simple of the south half of the northeast quarter, and the north half of the southeast quarter, of section 10, township 71, range 34, and seeks to redeem the same from certain tax sales under which defendants claim title. . This land was purchased from the government by James C. Taylor, in 1855. Plaintiff's title is claimed to be derived from Taylor through a number of judicial proceedings and conveyances, which need not be described at length. The unquestioned conveyances on which he relies commence with a warranty deed, executed by Sarah D. Moeller and husband to John Gerard, dated August 21, 1856. He claims that a deed for this land was made by Taylor to Mrs. Moeller in 1856, which was never recorded, and is now lost. The tax sales in question were made on the second day of October, 1882, for the taxes of 1881, and treasurer's deeds were subsequently issued under those sales. Defendant Morse received one of these deeds for the northeast quarter of the southeast quarter of said section, defendant Wells received one for the southeast quarter of the northeast quarter, and the grantor of defendant Mitchell received one for the remainder of the land in controversy. Each defendant asked to have his title quieted as against plaintiff. Defendant Mitchell makes the treasurer of Adams county a party, to his cross-petition, and asks that he be required to execute a new deed to cure the alleged defects in the first one. The three cases were tried together in the district court. The plaintiff was denied relief in each case, and decrees rendered in favor of defendants, as prayed. The treasurer of Adams county was directed to execute and deliver to defendant Mitchell a new deed for the land claimed by him, to-wit: The southwest quarter of the northeast quarter, and the northwest quarter of the southeast quarter of said section. . The plaintiff in each case appeals.

Lynn v. Morse.

*H. C. Van Vorhis* and *Maxwell & Dale*, for appellant.

*A. L. Wells* and *W. O. Mitchell*, for appellees.

ROBINSON, J.—I. The first question which we need to consider is the right of plaintiff to attack the title of defendants. Section 897 of the Code provides that "no person shall be permitted to question the title acquired by a treasurer's deed without first showing that he, or the person under whom he claims title, had title to the property at the time of the sale, or that the title was obtained from the United States, or this state, after the sale." Appellant insists that there are certain formal defects in the treasurer's deeds, and that in consequence the provision quoted does not apply. But it was decided otherwise in *Bowers v. Hallock*, 71 Iowa, 218. No actual possession of the premises is claimed on the part of plaintiff, nor any of his grantors. His right is measured by his title and the constructive possession it would give. It would be necessary, therefore, for him to prove a title or interest in himself, even though that part of section 897 in question were not in force.

*1. TAX sale and deed: defective deed: who may question.*

II. We do not deem it necessary to set out the several links in plaintiff's alleged title. It is enough to say that in our opinion he is authorized to question defendant's title, if he has shown a transfer of title to or interest in the land from Taylor to Mrs. Moeller or her husband. On the ninth day of October, 1857, a decree was rendered by the district court of Adams county to correct an error in the name of the grantee from the United States. It is not shown when the action in which the decree was rendered was commenced; but from the fact that the decree corrected the same error in the name of the grantee of other lands, which are shown to have been sold by Taylor in February, 1856, it is evident that the proceedings were not hostile to the title claimed by appellant. Taylor died intestate

*2. ——: action to set aside: condition: title of plaintiff: lost deed: evidence to supply.*

in 1866. His widow qualified as the administratrix of his estate, and died in 1885. Taylor left four children surviving him, all of whom seem to have been of age at the time of his death. Some of them certainly were. After 1856 neither Taylor, nor his administratrix widow, nor children, ever made any claim to the land in controversy, so far as is shown, the decree aforesaid alone excepted; nor did they pay any taxes thereon. All the taxes, commencing with those of 1856 up to and including those of 1879, were paid by the grantees of Moeller and wife. Several mortgages were given by different grantees in plaintiff's chain of title and foreclosed, the premises sold, and sheriff's deed given. It thus appears that for more than thirty years Taylor and his widow and heirs made no claim to this land, and that during nearly all of that time the Moeller grantees were paying taxes, and asserting ownership by various instruments which were of record. After the death of the widow in 1885, Mrs. Morton, a daughter, was appointed administratrix of her estate, and by that means became possessed of the papers of Taylor. Among these was one which she says was an agreement between her father, James C. Taylor, and W. F. Moeller, for the sale of land in Adams county for six hundred and forty dollars, of which three hundred dollars had, according to the agreement, been paid. This paper was not found till 1887, after the commencement of these actions. A letter written by attorneys who had seen this instrument was introduced by agreement as evidence, and described it as follows : "An article of agreement between James C. Taylor and W. F. Moeller for the sale of the land in question, on which three hundred dollars were paid and the balance of three hundred and forty dollars remains unpaid. The agreement is dated May 3, 1856. Under the agreement the three hundred and forty dollars was to be paid in two weeks, at which time a deed was to be made." The statement of the amount unpaid evidently refers to the contents of the agreement, and not to any fact known to the attorneys.

W. F. Moeller died in 1877. Sarah D. Moeller testifies that she has no knowledge of the land in question, nor of the deed to Gerard, but that she had money which her husband told her he had invested in her name in Iowa land ; that he dealt largely in Iowa land in 1856; and that she signed papers, at his request, without knowing their contents. We are justified by the evidence in concluding that the agreement between Taylor and Moeller was signed by both parties. The fact that it was so signed, and that it was in the possession of one of them, is evidence that it had taken effect by delivery, and that the three hundred dollars · therein named were paid. But it is a custom generally known for such an agreement to be delivered in the first instance to the purchaser to be by him returned to the grantor when the ·deed is made. These facts, and the further facts that the final payment was to be made two weeks after the instrument was dated, that Taylor lived ten years after the making of the agreement without asserting any claim to the land, and that his widow and children made no claim to it, and that Moeller and wife conveyed the land within four months of the date of the agreement, and that their grantees alone asserted title adverse to Taylor after that time, satisfy us that the terms of the agreement were fulfilled, and a conveyance made by Taylor to Moeller or wife. Even though but three hundred dollars had been paid under the agreement, that payment would have given Moeller and his grantees the right to redeem from tax sales. *Adams v. Beale,* 19 Iowa, 68 ; *Rice v. Nelson,* 27 Iowa, 151 ; *Ellsworth v. Low,* 62 Iowa, 178. Appellant claims that Taylor conveyed the land to Mrs. Moeller. Whether he conveyed it to the husband. or wife is not material. The deed to Gerard was a warranty deed in the usual form, and both husband and wife unite in the granting clause and covenant and acknowedge receipt of the consideration. At least the abstract shows nothing to the contrary, and justifies that conclusion. All the interest of the husband was therefore conveyed.

III. Appellees rely in part upon a quitclaim deed

made since the commencement of these actions by Mrs. Anna Reed, alleged to be a daughter of Taylor. The only interest claimed for Mrs. Reed is such as she acquired by reason of being an heir to Taylor. We have found that he had no interest in this land at his death, hence none was conveyed by Mrs. Reed.

IV. Appellees insist that appellant is not entitled to maintain these actions, for the reason that he has not paid all the taxes due upon the land. The actions were commenced on the twenty-third day of September, 1886. At that time the second installment of the taxes on the land claimed by Morse was unpaid. It was paid by him on the thirtieth day of October, 1886. The first installment of the taxes of 1886 was paid by Morse, April 28, 1887, and the second installment was unpaid at the date of the trial, to-wit, June 8, 1887. All the taxes on the land claimed by Wells were paid when the action against him was commenced, but the taxes of 1886 were allowed to become delinquent, and were paid by Wells June 6, 1887. The taxes for 1885, on the land claimed by Mitchell were not paid, and the land was sold for these taxes on the third day of January, 1887. It is not shown that the taxes of 1886 are paid. It is claimed by appellant that the requirements of the statute are answered by showing that the taxes have been paid by some one at the date of trial; also that, if this be not true, appellees have waived the right to object that appellant failed to pay taxes due when the actions were commenced. Before plaintiff can question the tax titles of defendants he is required to show title in himself, and also "that all taxes due upon the property have been paid by such person or the person under whom he claims." Code, sec. 897. This provision does not apply to taxes paid by the tax-sale purchaser. *Taylor v. Ormsby*, 66 Iowa, 111 ; *Adams v. Burdick*, 68 Iowa, 668. The question now presented for our determination was considered in *Adams v. Burdick*, but not decided. The statute requires the plaintiff to state in his petition facts sufficient to entitle him to

3. ——: ——: ——:
payment of
taxes due by
plaintiff:
pleading:
waiver:
appeal.

make the redemption sought. He is required to show title in himself, and the payment of taxes, before he can question the tax title. The payment of taxes is, then, a material fact, and should be alleged in the petition. This being true, it seems to us that the taxes contemplated are those due when the action to redeem is commenced, and not those which may fall due subsequently. · Payment of all taxes due was not alleged in the petition. But no objection was made to the omission by demurrer or answer, and, so far as we have discovered, the objection is made for the first time in this court. The statute provides that a defect of this kind, when not objected to by demurrer or answer, shall be deemed waived. Code, sec. 2650. Hence it is now too late for appellees to urge the objection.

V. The land claimed by Morse and Wells was listed in the treasurer's office for the taxes of 1884 in the name of N. F. Claypool. For the taxes of 1885 it was listed by the assessor in the name of M. F. Claypool. The notice of the expiration of the time for redemption as to the Wells tract was published in July, 1885, and that as to the Morse tract was published in September of the same year. The notices were directed to "Lyman & Co., N. H. Claypool, and John H. Lynn." This was not sufficient. They should have been directed to "M. F. Claypool." *Fuller v. Butler*, 72 Iowa, 730; *Hillyer v. Farneman*, 65 Iowa, 228. But it is said that the auditor of Adams county corrected the assessor's book in June of 1885, by writing opposite the descriptions of the land in controversy the name of John H. Lynn. If it be conceded that the auditor had the power to make such a correction, it is evident that he did not accomplish it in this case. The name was written in pencil, for the convenience of the auditor, in writing up the anual tax-list. It was not placed in the column for owners' names, but across several columns ruled for other purposes.

4. ——: notice to redeem: wrong initials of name of person to whom taxed.

VI. Appellant urges two grounds of objection to the tax deed under which Mitchell claims. The first is

that it was acquired by Mitchell's grantor,

5. ——: deed to owner's attorney: bad faith: action to redeem.

Towner, in violation of his duties as attorney for plaintiff, and the second is that the proof of service of the notice of expiration of the time for redemption is defective. The facts in regard to the first ground appear to be that the law firm of Anderson & Towner, of which Mitchell's grantor was a member, was employed by plaintiff to foreclose a mortgage on the land in dispute. The mortgage was foreclosed, the land sold, and on the nineteenth day of June, 1885, a sheriff's deed therefor was issued to plaintiff. It was forwarded to plaintiff's attorney in Ohio on the next day. In the letter transmitting the deed Anderson & Towner wrote as follows: "The taxes on the land for this year are $28.85, if paid before July 1, '85. * * * What will Lynn take for the land? Has he got title to the whole?" A draft was sent to Anderson & Towner for the amount named. They returned it July 2, 1885, for correction. It does not appear when it was again received by them, but the tax receipt was dated on the day they returned the draft. At the time of this transaction they were the attorneys of the holder of the tax-sale certificate for the land claimed by Mitchell, for the purpose of obtaining a tax deed, and on or about the eighth day of July, 1885, published notice of the expiration of the time for redemption. At a subsequent date the certificate was assigned to Towner, and a treasurer's deed was issued to him. After obtaining the deed, he conveyed his interest in the land to Mitchell by quitclaim deed. The amount of taxes reported to plaintiff was not due on the four forty-acre tracts, but on three of them, the taxes on the other having been paid previously by the holder of the tax-sale certificate. The taxes due were for 1884, and not for 1885. It is claimed for Mitchell that Anderson & Towner were under no obligation to disclose the real condition of the land as to tax sales; that they received no compensation for that service; and that the information given was strictly true as to the land covered by the

receipt except as to the year. But they were employed and paid to render services which resulted in procuring for plaintiff a sheriff's deed for all this land. They knew that plaintiff desired to perfect and protect the title thus acquired, and it was their duty to inform him as to all tax liens of which they had knowledge. If this duty was not included in the foreclosure proceedings it was assumed by them, and they were entitled to compensation for services rendered, whether demand was made for it or not. They must have known of the tax-sale lien when they reported the amount of taxes due, and should have reported it. It may be that their failure to do so resulted from a division of labor between the members of the firm, which caused an overlooking of the facts, but whether the omission was the result of an oversight or an evil intent is not material for the purposes of this case. It operated as a fraud upon plaintiff, and no member of the firm could afterwards reap a benefit from it by taking title in himself. Mitchell is chargeable with notice of defects in his grantor's title.

The second ground of plaintiff's objection to Mitchell's title is that the proof of service of notice of the expiration of time for redemption was not signed. The treasurer was not authorized to execute a deed for the land until ninety days after the filing in his office of an affidavit proving due service of the notice. An affidavit is not complete unless signed by the affiant. *Crenshaw v. Taylor*, 70 Iowa, 386. Hence the proof of service was insufficient. But Mitchell claims that this defect was cured by the filing of new proof of service, and the expiration of the required ninety days thereafter, without the payment by plaintiff of the amount required to redeem. The answer to this is that Mitchell has at all times denied plaintiff's right to redeem. Before commencing his action, plaintiff endeavored to effect an amicable redemption by paying to Mitchell the amount to which he would be entitled in case of redemption; but the latter refused to accept it, and

6. ——: notice to redeem: unsigned affidavit of service.

proposed to contest the right of plaintiff, claiming great advantage over him. The only remedy left to plaintiff was an equitable action in the district court. That he brought, and tendered to Mitchell the amount to which he was entitled, but the tender was refused. We conclude that appellant is entitled to redeem each tract of land in controversy upon payment of the proper amounts.

REVERSED.