ELEANOR THOMPSON, Appellee, v. FLOYD CHAMBERS et al., Appellants; TRUMAN C. KNAUER et al., Defendants, Appellees; STATE BOARD OF SOCIAL WELFARE, Intervenor, Appellee.

No. 45444.

1266

February 18, 1941.

Carl P. Knox, for appellants.

Mary K. Fagan, for appellee.

C. H. Taylor, for defendants-appellees.

John M. Rankin, Attorney General, and Don Hise, Assistant Attorney General, for intervenor-appellee.

GARFIELD, J.—On or about March 1, 1890, James B. Thompson, husband of plaintiff, Eleanor Thompson (herein referred to as appellee), acquired the property in question. The Thompsons thereupon commenced to occupy it as their homestead. James B. Thompson died intestate on August 3, 1929, leaving surviving him appellee and three daughters. Appellee became sole owner by quitclaim from the daughters and their spouses. The property consists of three acres of ground, with house, barn, and chicken house in the small town of Casey, Guthrie county. At the time of the trial appellee was 88 years of age. Following her husband's death in 1929, she continued to occupy the premises as her home, at least down to September 1938, when she became ill and went to the home of a daughter in Des Moines. It will thus be seen that appellee occupied the premises continuously as a homestead for nearly 50 years.

In September 1938, appellee found it difficult to care for herself because of failing health and advanced years, left the key to her house with a Mrs. Schiller, a next-door neighbor, and went to stay with her daughter in Des Moines in order that she might receive better care. About every other day during the months of September and October 1938, this neighbor went to the Thompson premises and went into the house. There were many rats and mice in the house and Mrs. Schiller interested herself in trying to exterminate these pests. Appellee left all her furniture and personal belongings in the home. Another

neighbor, one Griffith, rented the barn and a portion of the three acres of ground during 1937, and at least during a part of 1938, including the months of September and October. During a part of the time he kept his cow in the barn.

On January 3, 1938, the property in question was sold at tax sale for the delinquent taxes for 1934-5-6. Guthrie county was the purchaser. The certificate of purchase was assigned to Floyd Chambers (herein referred to as appellant) on March 16, 1938, who paid Guthrie county therefor $100.74. Later, appellant paid subsequent taxes amounting to $34.43. The only notice of expiration of right to redeem that was given was published in a newspaper on October 13, 20, and 27, 1938. On February 1, 1939, the county treasurer issued to appellant a tax deed. Very soon after the issuance of the tax deed, Chambers and his wife moved into the property.

Appellee's case is bottomed on two propositions. First, it is claimed that the taxes for which the property was sold had been suspended and there were no delinquent taxes for which sale could be made. Second, personal service of notice of expiration of right to redeem was not had upon appellee, nor upon any other person in possession of the property as required by Code, section 7279. The trial court held with appellee on both propositions, set aside the tax deed and quieted appellee's title.

I. Taking up first the question of suspension of taxes. The statute, section 6950, Code, 1939, provides that whenever, by reason of age or infirmity, a person is unable to contribute to the public revenue, he may file a verified petition with the board of supervisors asking that his taxes be suspended. The board thereupon "may" grant that relief. The following section, 6950.1, provides:

"Suspension of taxes. Whenever a person has been issued a certificate of old-age assistance and is receiving monthly or quarterly payments of assistance from the old-age assistance fund, such person shall be deemed to be unable to contribute to the public revenue. The state board of social welfare shall thereupon notify the board of supervisors, of the county in which such assisted person owns property, of the aforesaid fact, giving a statement of property, real and personal, owned,

possessed, or upon which said person is paying taxes as a purchaser under contract. *It shall then be the duty of the board of supervisors* so notified, without the filing of a petition and statement as specified in section 6950, *to order the county treasurer to suspend the collection of all the taxes assessed against said property and remaining unpaid by such person."* (Italics supplied.)

A certificate of old-age assistance was issued to appellee May 3, 1937, and she was receiving benefit payments. Under date of October 25, 1937, the state superintendent of old-age assistance (see chapter 189.1, Code, 1939) duly notified the board of supervisors of Guthrie county that appellee was receiving old-age assistance benefits pursuant to a certificate issued to her, together with a description of the property in question. The notice was strictly in accordance with the foregoing quoted provision of the statute. The county auditor presented this notice to the board of supervisors and subsequently delivered it to the county treasurer, orally informing the treasurer that the board had approved it. Thereupon, the property in question was duly listed in the tax suspension list by the regular employees in the treasurer's office. Due to oversight, however, the property was offered for sale in January 1938.

In urging that the lower court erred in holding there had been a suspension of taxes, appellant relies very largely upon the fact that the minute book of the board of supervisors contains no record whatever of any action with reference to the suspension of the taxes for which the sale was had. We think the trial court correctly held that the taxes had been suspended.

It seems to us to be important that the statute, section 6950.1, provides that upon receipt of notice from the old-age assistance commission, such as was furnished in this case, "it *shall then be the duty* of the board of supervisors * * * to order the county treasurer to suspend the collection of all the taxes assessed against said property and remaining unpaid by such person." The direction to the board is mandatory—it has no discretion in the matter. Section 6950, however, provides that in acting upon a petition for suspension filed by the taxpayer himself, the board "may" order the suspension of taxes. It

seems to us that if the board, in the present case, had failed or refused to order the taxes in question suspended, it could have been compelled to do so. In view of the mandatory provision of the statute, we think there is sufficient evidence to sustain the finding of the trial court that the taxes for which this sale was had were properly suspended. We are not disposed to hold that the failure of the board of supervisors to record its action in its minute book is fatal to appellee's claim of suspension.

The statute, Code section 5141, in effect makes the county auditor the clerk or secretary of the board of supervisors. The notice from the old-age assistance commission addressed to the board was received by the auditor who in turn called it to the attention of the board. We think it is a fair inference from the testimony that the board, informally perhaps, acknowledged the correctness of the notice and directed the auditor to call the attention of the county treasurer to the fact that the taxes in question had been suspended. The treasurer caused the proper entries to be made upon the records in his office. Appellant does not suggest to us any action that the board could have taken except to suspend the taxes pursuant to the mandatory direction of section 6950.1.

The testimony shows that subsequent to the issuance of the certificate and on the day of the first publication of the notice to redeem, the county treasurer wrote appellant as follows:

"Please be advise that thru error in our office the tax sale Certificate No. 240 issued 1/4/38 to Guthrie County and assigned to you will have to be cancelled and your money refunded as this property was to have the taxes suspended on account of the owner or life estate receiving an old age pension. Yours very truly, County Treasurer"

In addition to the foregoing information by letter, to which appellant made no response, one Stammer, a member of the county old-age assistance board and a former member of the town council, orally informed appellant about the time the letter was written by the treasurer that the taxes in question had been suspended. Appellant's response to this information was that the matter had been placed in the hands of his attorney. He at

no time indicated any willingness to surrender the certificate and receive back the money with which he had parted in the transaction.

It may be thought strange that the tax deed was issued to appellant on February 1, 1939, after he had been notified that the taxes had been suspended. One explanation for this is that a new county treasurer took office in January 1939, a month before the deed was issued, and the matter was entirely new to him.

It can scarcely be claimed that the property that had been the homestead of this old lady for nearly 50 years could legally be sold for the nonpayment of taxes which had been suspended. Suspended taxes are not delinquent for the collection of which property can be sold pursuant to Code section 7244. One Iowa case, Fidelity Inv. Co. v. White, 208 Iowa 519, 223 N. W. 884, 225 N. W. 868, throws light on this question. There property was sold for the nonpayment of special assessments during the pendency of an appeal to the district court from the making of such assessments. The court held that the legal effect of the taking of the appeal was to suspend payment of the assessments until the matter was disposed of in the district court, and that pending such determination, the assessments were not delinquent and there was no warrant for the sale.

II. We agree with the trial court also that there was no valid service of notice of expiration of redemption rights.

The statute, Code section 7279, provides that the notice must be served upon the person in possession of the real estate, and also upon the one in whose name it is taxed, if such person resides in the county where the land is situated, in the manner provided for the service of original notices. Although appellee's husband had been dead since August 1929, it appears that the property in question was still taxed in his name. Where the one in whose name the property is taxed is dead, it is of course impossible to serve him and no notice upon such person is necessary. Gray v. Morin, 218 Iowa 540, 542, 255 N. W. 631, 632; Nugent v. Cook, 129 Iowa 381, 105 N. W. 421.

The statute does not require notice on the owner as such. However, notice must be served upon the party in possession.

Shelley v. Smith, 97 Iowa 259, 66 N. W. 172; Cahalan v. Van Sant, 87 Iowa 593, 54 N. W. 433; Callanan v. Raymond, 75 Iowa 307, 39 N. W. 511. "The requirement of the statute appears to us to be absolute." Bradley v. Brown, 75 Iowa 180, 181, 39 N. W. 258, 259. If appellee, though absent in Des Moines in October 1938, was still a resident of Guthrie county and the party in possession of the property, she was entitled under the statute to personal notice, and the notice by publication, concededly the only notice given, will not sustain the deed. Neilan v. Unity Inv. Co., 147 Iowa 677, 126 N. W. 947.

It seems to us that the finding of the trial court that appellee was still a resident of Guthrie county and in possession of her homestead has sufficient support in the evidence and that we should not disturb such finding.

Even though it could be said, however, that appellee surrendered possession of her homestead when she went to stay with her daughter in Des Moines in the month preceding the publication of the notice regarding redemption, still we think either the neighbor, Mrs. Schiller, or the renter, Griffith, or both, can fairly be said to have had possession of the property in question so as to entitle one or both of them to notice. The cases cited above, and many more which might be cited, are clear that the owner of the property may take advantage of the failure of the certificate holder to notify the party in possession even though the owner, being the party in whose name the property is taxed, himself, receives due and legal notice. This court has held repeatedly in cases of this kind that the statutory provisions as to notice must be strictly complied with, in order that parties may be deprived of their property. See Medland v. Walker, 96 Iowa 175, 178, 64 N. W. 797, 798.

We conclude that appellee, the neighbor lady, Mrs. Schiller, with whom the key was left and who was attempting to rid the house of rats and mice, or Griffith, who rented the barn and some of the land for pasture—or one or more of them—were in possession of the property and that the failure to serve any of them with notice of expiration of redemption right is fatal to appellant's tax title. The following cases sustain this

conclusion. Foy v. Houstman, 128 Iowa 220, 103 N. W. 369, where it was held that where the owner had his agents post "For Sale" notices on vacant lots and caused the sidewalk to be cleared of snow and permitted a neighbor to use a portion as a vegetable garden he was in possession. In Cahalan v. Van Sant, 87 Iowa 593, 54 N. W. 433, it is held that one who used a portion of the land for hay was in possession. The court says at page 596 of 87 Iowa, page 434 of 54 N. W.: "It was not important that the acts indicating possession should be exercised at the season of the year when the deed was to issue. It was only necessary to do such acts as the nature of the particular occupancy required." Sapp v. Walker, 66 Iowa 497, 24 N. W. 13, where it is held that an owner who hired a man to cut weeds and permitted others to move dirt from vacant ground was in possession and accordingly entitled to notice. Ellsworth v. Low, 62 Iowa 178, 17 N. W. 450, where the court holds that the taking of timber from a vacant lot is sufficient to amount to possession requiring notice. See also Callanan v. Raymond, 75 Iowa 307, 39 N. W. 511, and Whities v. Farsons, 73 Iowa 137, 34 N. W. 782.

Apparently one excuse of appellant for not serving appellee personally was that he did not know where to find her. It is significant, however, that he had no difficulty in locating her when his tax deed was issued to him and he desired to take over the occupancy of the premises. The testimony also shows that at or about the time the deed was issued, appellant's wife, apparently at appellant's suggestion, called on Mrs. Schiller and obtained from her the key to the house. We think appellant would have had little trouble in locating appellee or the neighbor lady or the renter, Griffith, if he had made an effort to do so.

III. One other matter deserves attention. Appellant argues that before appellee can be heard to question his tax deed, she must pay or tender all taxes due upon the property. Code section 7290 is relied upon. This contention is without merit for several reasons.

This court has held on several occasions that where the holder of a tax title relies upon this provision of statute, and

the petition attacking the deed does not show compliance with the statute, the question must be raised either by way of demurrer, or in any event by answer, to the petition. In Minneapolis & St. L. R. Co. v. Pugh, 201 Iowa 208, 210, 205 N. W. 758, 759, this court says:

"No question involving this statute [section 7290] was raised by appellant in the trial court, either by way of demurrer or answer to appellee's petition. Appellant is, therefore, in no position to urge said matter in this court for the first time. Adams v. Burdick, 68 Iowa 666; Lynn v. Morse, 76 Iowa 665; Wilkin v. Wilkin, 91 Iowa 652; Medland v. Walker, 96 Iowa 175."

Again, this court has held that the statute, section 7290, requiring payment of taxes as a prerequisite to an attack upon a tax title does not apply where the tax deed is void. Hawkeye L. Ins. Co. v. Valley-D. M. Co., 220 Iowa 556, 565, 260 N. W. 669, 674, 105 A. L. R. 1018, 1025; Medland v. Walker, 96 Iowa 175, 64 N. W. 797; Wilkin v. Wilkin, 91 Iowa 652, 60 N. W. 194; Adams v. Snow, 65 Iowa 435, 21 N. W. 765. The three cases last cited hold that a tax deed is void where notice regarding redemption is not given in the manner provided by statute.

Again, there are cases holding that section 7290 refers only to taxes due the state and county, and not to such taxes as have been paid by the tax sale purchaser. Wilkin v. Wilkin, 91 Iowa 652, 60 N. W. 194; Lynn v. Morse, 76 Iowa 665, 39 N. W. 203; Taylor v. Ormsby, 66 Iowa 109, 23 N. W. 288.

Aside from all the foregoing, since it is our conclusion that the taxes for the three years for the alleged nonpayment of which sale was made had been legally suspended, it seems plain to us that there were no taxes owing by appellee which it was her duty to pay or tender as a prerequisite to obtaining relief.

In this connection, Code section 7293 contains the following provision:

"Wrongful sales—purchaser indemnified. When, by mistake or wrongful act of the treasurer, land has been sold on which no tax was due at the time, * * * the county shall hold

the purchaser harmless by paying him the amount of principal, interest, and costs to which he would have been entitled had the land been rightfully sold, and the treasurer and his bondsmen shall be liable to the county therefor to the amount of his official bond; or the purchaser, or his assignee, may recover the same directly of him and his bondsmen.''

By the letter hereinbefore referred to, the county treasurer told appellant that his money would be refunded if he would return his tax certificate, but appellant made no response to the letter. It may be that appellant is entitled to the return of all or part of the money paid by him, from Guthrie county, or from the treasurer and his bondsmen, under Code section 7293, or otherwise. We refrain from passing upon this question. Guthrie county is not a party to this suit.

We deem it only fair, however, to modify the judgment and decree of the trial court by providing that it is without prejudice to any right appellant may have under Code section 7293, or otherwise, against Guthrie county, its county treasurer or his bondsmen, past or present, to recover all or any part of the sum of $100.74 paid by him for the tax certificate, or subsequent taxes in the sum of $34.43, together with any interest thereon.

Some other questions are raised to which we have given full consideration. We regard the foregoing as determinative of the case.

Except for the above modification, the judgment and decree of the trial court is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.