William BURKS, Frank Burks, Jr., Milton Burks, and Mrs. Mildred Duke, Appellees,

v.

S. N. HEDINGER, Appellant.

No. 53374.

Supreme Court of Iowa.

May 6, 1969.

Raymond M. Hedinger and Thaddeus C. Jones, Des Moines, for appellant.

Timothy McCarthy and Davis, Huebner, Johnson & Burt, Des Moines, for appellees.

GARFIELD, Chief Justice.

This is an action in equity to set aside a tax deed to a residence property in Des Moines in which defendant, grantee of the deed, asks that title be quieted in her. Following trial there was a decree for plaintiffs from which defendant has appealed.

Sole question presented here is largely factual—whether, as the trial court found, one Lorenzo Duke was in possession of the real estate within the meaning of section 447.9, Code 1966 and therefore notice upon him of expiration of the right of redemption from the tax sale was required. Duke was not in fact served with such notice.

Defendant purchased the property, known locally as 123 Jefferson Ave., Des Moines, at tax sale December 4, 1963, for nonpayment of taxes for 1962, payable in 1963, amounting with interest and costs to $57.24. Before tax deed issued she also paid taxes and assessments for later years in an undisclosed amount. The property was taxed in the name of Frank Burks who died October 30, 1960 and his estate, nor that of his wife, was never probated in Polk County, which includes Des Moines.

Plaintiffs are the daughter and three sons who survived. Lorenzo Duke, whom plaintiffs claim was in possession of the property, is the divorced husband of the daughter Mildred (Duke).

No redemption having been made from the tax sale, defendant caused to be published on October 6, 13 and 20, 1966, in a weekly newspaper in Ankeny, north of Des Moines in Polk County, notice of expiration of right to redeem in 90 days from the completed service of the notice. The notice was addressed to Frank Burks, deceased owner, and the four plaintiffs. No redemption having been made within the 90-day period, the Polk County Treasurer issued the tax deed to defendant January 27, 1967, as provided by Code sections 448.1, 448.2.

Plaintiff's petition in this action was filed September 28, 1967 and trial was held April 8, 1968.

I. Since this is an equity case our review is de novo. Rule 334, Rules of Civil Procedure. However, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court but are not bound by them. R.C.P. 344(f) 7.

II. The property in dispute was the home of Frank Burks until his death in 1960. It was improved by a dwelling and a shed to the rear. After the father's death his son Milton seemed to take charge of the place and occupied it as his home until the spring or summer of 1965. In the fall of that year he had health problems and between October 22, 1965 and May 6, 1966 was a patient in Veterans' Hospitals several times. Until issuance of the tax deed no one else lived in the property after Milton moved out.

The dwelling was in disrepair and most of Milton's furniture had been removed when notice of expiration of right to redeem from tax sale was published and deed issued.

Lorenzo Duke lived in Des Moines at 1020 Crocker Street. He had a truck, did hauling, moving and a little of everything. Until his health failed as indicated supra and he had to quit, Milton helped Duke with his work. While Milton was working for Duke they picked up a lot of "stuff", stored it in the latter's yard and then hauled it away and sold it. Eventually the city required Duke to move his lumber from 1020 Crocker Street. Milton then told Duke he could store it in his yard at 123 Jefferson. Duke testified: "I put the lumber in his yard and Milton says also 'You can have the key to the house and store your other stuff in there' and that's what I did."

Duke also testified: "The lumber, I imagine, was on there (Jefferson Street) at least nine months, and then I imagine that before that I had other stuff on the premises. I had at one time three truck loads of good size lumber there, piled in the rear yard of the property. In the shed on the premises, I kept just old stoves or junk that I pick up from people that give me throw-away articles. I had several pieces of antique benches and different things, beds and refrigerators, or two, in the house."

The daughter of Frank Burks, Mildred (Duke), lived in Omaha, about 150 miles from Des Moines, during this period but owned the residence property adjoining that in controversy (125 Jefferson) which she rented to a Doris Harvey. Mildred came to Des Moines occasionally and observed the property in dispute in 1966. She testified: "Outside Lorenzo Duke had quite a stack of lumber and there was quite a few things on the outside of the grounds out there, and there was * * * a little shed full of like duofolds, chairs, a lawn mower and just a lot of things. On the inside there was refrigerators, a stove—when I say refrigerators there was more than two, and carpeting, bed and dresser, a small dining room table and chairs, and a coffee table and radio."

In September, 1966 Milton told his sister Mildred he'd give her a quitclaim deed to the property at 123 Jefferson if she'd pay his taxes on it. Mildred then asked her other two brothers for such a deed and said she would pay the taxes on the property. She then wrote the Polk County Treasurer she wanted to pay the taxes on the place and enclosed her signed check therefor with the amount left blank for the treasurer to fill in. The figure the treasurer inserted in the check was $90.55 and receipt was issued to Mildred therefor to pay the second half of the taxes for 1965, payable in 1966.

The tax receipt was dated September 28, 1966. It recited the property was sold for taxes as shown in Book 81, page 146 and must be redeemed at county auditor's office. The deed from Milton to his sister was dated October 5 (1966).

As stated, Doris Harvey lived next door. She testified one side of the back yard was filled with lumber, she guessed it was piled five feet high but thought Lorenzo Duke had it on something. She also said: "I saw him around the property in the fall and winter of 1966. He is in the business of second-hand material and hauling."

There is little doubt the lumber piled in the rear yard was hauled there by Duke and belonged to him.

Mrs. Harvey also said she had nothing to do with taking care of the premises at 123 Jefferson until after Milton went to the Veterans' Hospital; she did not know when this was (other testimony, offered by defendant, is that it was October 22, 1965); in January, 1967 Mildred sent her the key to the house to show it to prospective renters and she did so on one occasion but did not go through the whole house.

The above pretty well summarizes the evidence for plaintiffs. It is uncertain therefrom as to just when the lumber was piled in the back yard, how long it remained there and whether it was in place at and before the time notice of expiration of right to redeem from tax sale was published. Counsel for defendant told the court during the trial, "The sole question presented by the issues is whether anyone was in possession on October 3, 1966." (As stated, notice was first published October 6.)

However, the uncertainty just referred to becomes unimportant in view of the testimony for defendant, especially of defendant's husband, an attorney in the case who acted for defendant throughout. He said he visited the premises in August, September and on October 3, 1966. The last time he was accompanied by his wife. They had no key to the dwelling and made no attempt to enter it at any of these times. They found it locked and looked through the windows. They found no one living there, the house in disrepair and virtually without furniture.

Mr. Hedinger testified: "There was no furniture in the house, except very little pieces, a broken down chair and an old rug, rolled up in the living room. In the kitchen, there was nothing except an opened, very old and unusable refrigerator. There was just junk in the bathroom and nothing of value in the whole house. The basement showed water had been in it." (Just how the witness could tell by looking through the window the refrigerator was unusable was not explained.)

This witness also said, "There was a pile of lumber on the premises and in the northeast corner of the lot a shed * * * containing paper and junk, no furniture, except a few drawers, greatly damaged and worthless." Mr. Hedinger further said there was no change in the premises and house in September or October or when he next visited the place soon after the tax deed issued January 27, 1967 when he first entered the dwelling. In February (1967) Mr. Hedinger hired a truck to remove the lumber to a farm.

About the time the lumber was removed Lorenzo Duke went to the place, saw Mr. Hedinger and told him the lumber belonged

to him. Mr. Hedinger testified he had reason to believe Duke did not own the lumber because he had no interest in the premises. Duke testified that about a year before the trial (in April, 1968) some neighbors told him someone was moving his lumber away, he went to the place, told "them" it was his lumber and asked "them" to leave it.

It is apparent Duke's testimony, set out supra, that his lumber was on "there" at least nine months becomes specially significant in view of Mr. Hedinger's evidence the lumber was not moved until soon after the tax deed issued.

Defendant Mrs. Hedinger corroborated her husband as to what they saw through the windows of the dwelling on October 3; it was unoccupied, in disrepair; except for a chair, a rolled-up rug and a refrigerator in the kitchen she saw no furniture or furnishings; so far as she could see there was no change in the condition of the property between October 3 and when she was there after the tax deed issued. Defendant also testified she and her lawyer tried to contact the heirs of Frank Burks but could not locate them.

Defendant further said she did not notice the pile of lumber in the rear of the premises and did not go out to the shed at the rear when viewing the premises; she never entered the house before January 27, 1967; previously, her object in looking through the windows was to ascertain, if possible, whether the house was occupied; there were no changes in the interior of the house at any times she viewed it in the fall of 1966 and January 1967.

As before indicated, testimony for defendant establishes the dwelling was in disrepair and unoccupied but confirms, rather than denies, there was a sizable pile of used lumber belonging to Lorenzo Duke stored in the yard at and prior to the time notice of expiration of right to redeem was published. Nor is it denied that at least some used furniture was then stored in the shed; that Duke had a key to the house which he kept locked; during several months in 1966 he was frequently on the place, hauling used property there or removing it; this was all done with permission from Milton Burks who seemed to be in charge of the premises until he made the deed to his sister Mildred October 5, 1966.

On the whole record we are inclined to reach the same conclusion the trial court did that notwithstanding no one was living in the dwelling there is sufficient evidence Lorenzo Duke was in possession of the premises in the summer and fall of 1966 within the meaning of Code section 447.9.

III. This statute provides that the holder of the tax certificate must cause to be served upon the person in possession of the real estate and also upon the one in whose name it is taxed, if such person resides in the county where the land is situated, in the manner provided for service of original notice, notice of expiration of the right to redeem.

Of course where, as here, the one in whose name the property is taxed is dead, it is impossible to serve him and no notice upon such person is necessary. Thompson v. Chambers, 229 Iowa 1265, 1271, 296 N.W. 380, 383, and citations.

The statute does not require notice upon the owner as such. But the requirement of notice on the person in possession appears to be absolute. "It is one of the steps necessary to be taken to cut off the right of redemption, * * *." Bradley v. Brown, 75 Iowa 180, 181, 39 N.W. 258, 259; Thompson v. Chambers, supra, 229 Iowa 1265, 1272, 296 N.W. 380, 383.

Our cases are clear that the owner of the property, even though himself served with notice of expiration of redemption right as the one in whose name the property is taxed, may take advantage of failure of the certificate holder to notify the person in possession. Thompson case, supra, and citations. See also Iowa

decisions cited in Anno. 140 A.L.R. 666, 671. This is the view taken in most jurisdictions. ibid.

■ As indicated by what is just said, we have held repeatedly in cases of this kind that the statutory provisions as to notice must be strictly complied with in order that parties may be deprived of their property. Thompson v. Chambers, supra, and citation; Murphy v. Hatter, 227 Iowa 1286, 1289, 290 N.W. 695 and citations, distinguishing Rowland v. Brown, 75 Iowa 679, 681, 37 N.W. 403, 404, cited by defendant.

■ Where possession is such as to put the tax purchaser on inquiry as to why or under what right the possession is claimed it is deemed sufficient in a case of this kind. Ellsworth v. Low et al. 62 Iowa 178, 180, 17 N.W. 450; Sapp v. Walker, 66 Iowa 497, 498-499, 24 N.W. 13; Cahalan v. Van Sant, 87 Iowa 593, 596, 54 N.W. 433, 434; Foy v. Houstman, 128 Iowa 220, 222, 103 N.W. 369; Comment 46 Iowa Law Review 185. The precedents just cited are briefly summarized and approved in Thompson v. Chambers, supra, 229 Iowa 1269, 1273, 296 N.W. 380, 384.

■ The trial court concluded and we agree the pile of used lumber on the premises in the summer and fall of 1966 was sufficient to impart notice to defendant possession was exercised by someone. As stated, it is admitted defendant's agent-husband saw this as early as August. No reason is apparent why inquiry from the next-door neighbor who rented her property from Mildred Duke would not have disclosed this use of the premises was being made by Lorenzo Duke.

■ "Actual possession evidently results even if one cannot tell who is in possession from an observation of the premises." Comment 46 Iowa Law Review 185,

187, citing Callanan v. Raymond, 75 Iowa 307, 39 N.W. 511; Cahalan v. Van Sant, supra, 87 Iowa 593, 54 N.W. 433; Wallace v. Sache, 106 Minn. 123, 125, 118 N.W. 360, 361.

It is true in several of our earlier decisions heretofore cited the premises were not improved by a dwelling as they were here. But in Thompson v. Chambers, supra, 229 Iowa 1265, 296 N.W. 380, the property consisted of three acres of ground with house, barn and chicken house in a small town. The owner had moved to Des Moines, leaving the key to the house with a neighbor lady who was attempting to rid it of rats and mice, and renting the barn and some of the land for pasture. We held our earlier precedents cited supra where the land was without a dwelling were applicable. See also Thomas v. Flynn, 169 Neb. 458, 100 N.W.2d 37.

■ We are satisfied the fact no one lived in this dwelling for some time before notice of expiration of right to redeem was given does not establish no one was in possession of the real estate within the meaning of section 447.9.

We have considered precedents cited by defendant and do not consider them contrary to anything said herein.

The decree provides plaintiffs are entitled to redeem from the tax sale, fixing the amount to be paid for taxes, costs and improvements to the property, with credit to plaintiffs for net profits, less expenses, collected by defendant. Some adjustment of these amounts may be necessary because of pendency of the appeal. If the parties are unable to agree upon them when procedendo issues, the trial court shall determine the amounts following notice and hearing. The decree is

Affirmed as thus modified.

All Justices concur.